Motion to dismiss appeal denied September 8; argued at Pendleton
October 26, 1942; affirmed January 13; rehearing
denied March 9, 1943

## VAUGHN et al. v. SPENCE et al.

(133 P. (2d) 242)

Before KELLY, Chief Justice, and LUSK, RAND, ROSS-
MAN and BRAND, Associate Justices.

*P. J. Gallagher,* of Ontario (Robert F. Vaughan and Gallagher & Gallagher, all of Ontario, on the brief), for appellants.

*C. T. Godwin,* of Baker, for respondents.

ROSSMAN, J. This is an appeal by the plaintiffs from a decree of the circuit court which was entered after that court had overruled a demurrer to the answer and the plaintiffs had declined to plead further. The decree dismissed the complaint and granted the defendants some affirmative relief which we shall describe later. The plaintiffs are Mary M. Vaughan, who alleges herself to be the owner of "stock certificate No. A 452 of the Eastern Oregon Federal Savings and Loan Association", and the First National Bank of Baker, which, in the capacity of trustee, claims to be entitled to possession of a similar certificate. The controversy concerns the ownership of the two certificates just mentioned.

The demurrer which the court overruled was predicated upon a contention that the answer failed to set forth a defense.

One of the averments of the complaint is:

"The Plaintiffs refer to the findings and records of that certain proceeding in the County Court of the State of Oregon for Baker County entitled 'In

the Matter of the Estate of John A. Trotter, Deceased,' and by such reference incorporate in and make said files and records a part of this Complaint to the same extent as though said files and records were set out in full herein."

Nothing, however, is attached to the complaint, nor is anything copied into it.

Omitting nonessentials, we shall now review the other averments. The complaint (Paragraph I) alleges that prior to August 9, 1935,

"John A. Trotter, now deceased, was the owner of stock certificates designated as A 451 and A 452 of the Eastern Oregon Federal Savings and Loan Association, a corporation, organized and existing under the laws of the State of Oregon  *  *  *."

Next, it says that Trotter died testate August 9, 1935; that August 15, 1935, his will was admitted to probate; that the aforementioned bank was appointed administrator with will annexed; that it published notice to the creditors of the deceased's estate; that an inventory of the estate was made; and that an appraisement was filed. So much of the complaint is admitted. All of its other allegations are denied, although some averments which form a part of the answer qualify an occasional denial. The controverted averments of the complaint allege:

"*  *  *  the stock certificates referred to in Paragraph I above were duly and regularly listed and appraised therein and thereby came into the hands of the First National Bank of Baker, Oregon, as administrator with the Will annexed  *  *  *."

Next, the complaint alleges that March 22, 1937, pursuant to a court order, the administrator sold "stock Certificate No. A 452  *  *  *  to Mary M. Vaughan, the Plaintiff herein,  *  *  *  said Plaintiff has at

all times since been the owner of said stock certificate No. A 452 * * *." These controverted averments also say that the administrator filed a final report; that he gave legal notice of the date for the hearing of objections to his report; that no objections were presented; and that the Court "entered an order authorizing the administrator to distribute the property left in said estate." Further, it is alleged:

"According to the terms of the said Will, all property remaining in said estate after payment of claims and specific bequests came into the hands of the First National Bank of Baker, Oregon, as trustee under the Will of said Estate; that the stock certificate designated as A 451 of the Eastern Oregon Federal Savings and Loan Association was among the assets of said Estate so coming into the hands of the said trustee and the said trustee has been at all times since the sole and exclusive owner of said stock certificate * * *."

When the final report was presented, so these averments say, "it was shown to the satisfaction of the County Court of Baker County, Oregon, that all taxes due and owing Baker County" by the deceased and by his estate had been paid. It is also alleged that the tax rolls show no unpaid taxes levied against the deceased in his lifetime. Finally, it is alleged that May 5, 1939, the defendant sheriff "seized and distrained the above designated Stock Certificates and funds represented thereby" and posted notices advertising the certificates for sale "to satisfy certain taxes claimed to be due and owing Baker County by the said John A. Trotter, now deceased, by virtue of an assessment levied on certain undescribed merchandise, stock and fixtures in the year of 1933."

The above is a review of the complaint.

From the foregoing it will be seen that each of the two plaintiffs claims to be the owner of one of the alleged "stock certificates." The plaintiff, Mary M. Vaughan, says she acquired ownership of certificate A 452 through purchase, and the other plaintiff, the bank, says it acquired certificate A 451 through devise. Both of these averments are denied by the answer, and that being true, we are forced to conclude that the plaintiffs lack interest authorizing them to maintain this suit unless the answer, or something else that we are entitled to consider, supplies the needed facts.

Let us now turn to the new matter recited in the answer. We have already mentioned the denials. After denying the averments of Paragraph I of the complaint, the answer says:

"* * * defendants aver the truth to be that the corporation referred to in said Paragraph I is the Eastern Oregon Federal Savings and Loan Association of Baker, a Federal corporation duly organized and existing under and by virtue of an Act of Congress of the United States of America; * * * the said John A. Trotter referred to in said Paragraph I was the owner of Account No. 451 and Account No. 452 of and with said Association, * * *.

"During his lifetime and some time prior to to the date of his death, said deceased deposited certain monies from time to time with the above referred to Eastern Oregon Federal Savings and Loan Association of Baker, * * *.

"Said Association never issues and has never issued any Certificates of Stock, but all monies so paid in are designated as savings accounts * * *.

"No evidence of any transfer of any kind or nature whatsoever was made by said deceased or by any person representing him or his estate, and no such transfer with reference to either of said ac-

counts has ever been made or attempted to be made so far as said Association is concerned; * * *.''

The new matter also alleges that Trotter's will directed that the residue of his estate should be paid over to the plaintiff, Mary M. Vaughan, when she attained the age of thirty, and alleges that she reached that age before this suit was begun, ''for which reason plaintiff First National Bank of Baker, Oregon, has no title or interest of any nature whatsoever in the account referred to and described in said Paragraph VIII.''

The answer alleges that the administrator's final report said nothing about taxes; that when the report came on for hearing

''The administrator was interrogated by the Court with reference to the payment of all taxes due against said estate and was assured definitely by said administrator at that time that the same had been paid:

''Thereupon, relying upon said representations, said County Court duly made its order to the effect that all claims were paid and that all taxes of every kind and nature, owing by said deceased at the time of his death, had been paid, * * *.''

Continuing, the answer avers that at the time of his death Trotter owed Baker County $469.20 in taxes. It alleges that this indebtedness arose through the fact that Trotter, in 1933, purchased a stock of merchandise owned by an insolvent concern entitled M. Weil & Company, upon which there had been assessed a tax of $469.20, which remained unpaid at the time of the purchase. Further, according to the answer, M. Weil & Company was engaged in ''closing out * * * selling and disposing of said stock and fixtures'' at that time, and when the assessor called upon Trotter (after he had made the purchase) for

the purpose of obtaining payment of the tax Trotter asked that payment be postponed until the early part of the year 1934, "at which time the said John A. Trotter agreed he would pay the same." It is alleged that the assessor accepted Trotter's promise and

"added the name of John A. Trotter to the assessment and assessment record of said M. Weil & Co., and continued said assessment at $9,200.00. Thereupon the tax roll of and for Baker County, Oregon, as based on said 1933 assessment, was duly calculated and made up, and the taxes computed and levied upon said $9,200.00 assessment. So made up and computed, taxes thereon then amounted to the sum of $469.20. Said tax roll and levy, so containing said assessment and levy against said M. Weil & Co. and said John A. Trotter, with the taxes so computed, was placed in the hands of the Sheriff of Baker County, Oregon, for collection, such being done in the early part of the year 1934."

Continuing, the averments of the answer describe in detail the manner in which the aforementioned tax of $469.20 was assessed in the years 1934 and 1935 against the aforementioned John A. Trotter.

The above concludes the review of the answer.

The complaint prayed for a decree restraining the sheriff "from proceeding with the threatened sale of the Stock Certificates" and for a decree "showing that all taxes heretofore assessed to John A. Trotter" and to his estate had been paid. The decree under attack, besides dismissing the complaint, decreed that the defendant sheriff was authorized "to proceed forthwith in the manner by law provided for the distraint and sale of personal property for the payment of delinquent taxes, all as affecting Account No. A-451 and Account No. A-452 standing in the name of John A. Trotter and with the Eastern Oregon Federal

Savings and Loan Association of Baker, a Federal corporation, * * *."

From the foregoing review of the complaint and the answer, it will be noticed that the parties are speaking, not of the same things, but of different things. The complaint concerns "stock certificates designated as A 451 and A 452" issued by an Oregon corporation. The answer denies the existence of the alleged Oregon corporation and of the stock certificates. It speaks of "a Federal corporation" created by an act of Congress, but bearing the same name as the one mentioned in the complaint. It avers that the Federal corporation "never issues and has never issued any certificates of stock." It then describes "Account No. 451 and Account No. 452" which it says John A. Trotter opened with the aforementioned Federal corporation through the deposit with it of sums of his money. It says that those were savings accounts repayable to him upon presentation of the savings certificates. In determining whether these differences are merely matters of nomenclature or of substance, we must bear in mind that the cause was presented to the circuit court upon a demurrer to the answer. When the denials and the new matter were presented by the answer, the plaintiffs did not amend their complaint, but chose to stand upon their averments as written. That being true, they filed a demurrer which eventually ushered in the decree now under attack. A demurrer invites the court to resolve all issues of fact against the party who filed it. Certainly, there is a difference between a stock certificate and a savings account. If the plaintiffs inadvertently used the term "stock certificates" when they meant "savings accounts", and if they likewise mistakenly described as an Oregon corporation an entity which they intended

to say was organized under Congressional enactment, they should have employed a motion to amend and not a demurrer. Under the circumstances, we are compelled to believe that the answer presents issues upon these subjects; and are further compelled to resolve those issues adversely to the plaintiffs. It seems just to add that the counsel who represents the plaintiffs in this court is not the one who adopted the course just described. However, we will not let our decision turn upon the inaccuracies of which we have just taken notice.

■ It will be observed that the answer denies that the plaintiff, Mary M. Vaughan, purchased from the administrator of the estate of John A. Trotter, deceased, one of these certificates, and that the answer also denies that the other plaintiff (the bank), in the capacity of trustee, acquired the other certificate through devise. The new matter which forms a part of the answer concedes neither the purchase nor the devise. The plaintiffs, however, claim that since the complaint says "the plaintiffs refer to the findings and records of that certain proceeding," being the probate records in the matter of the estate of John A. Trotter, deceased, we are bound to take note of those records. They claim that the probate records show that Mary M. Vaughan made the alleged purchase and also that the other certificate was bequeathed to the bank as trustee. As we have already said, copies of the probate records are not attached to the complaint as exhibits or in any other form. Code pleading permits a party to make an averment which concerns a document in any one of three ways: (1) Sum up in the body of the pleading the parts of the document which are material; (2) copy the material parts of the document into the pleadings; or (3) attach a copy of the

document to the pleading as an exhibit and by averment make it a part of the pleadings. The plaintiffs followed none of these alternatives so far as the probate records are concerned.

■ This court has consistently adhered to the method of pleading just indicated. One of our early decisions is *Caspary v. City of Portland,* 19 Or. 496, 24 P. 1036, 20 Am. St. Rep. 842. Two recent opinions are *In re Losie's Estate,* 156 Or. 207, 64 P. (2d) 525, 66 P. (2d) 1175, and *Griffith v. Hanford* 169 Or. 351, 128 P. (2d) 947. Clark on Code Pleading, page 148, declares that a document, in order to form a part of the pleading, must be annexed to the latter. Hence, we are compelled to ignore the probate records. We pause to observe that we know of no method whereby a bulky set of court papers in the form of probate records could properly be made a part of pleadings in another case. Undoubtedly much of the probate records in the proceeding known as the Estate of John A. Trotter, deceased, is immaterial to the issues concerning these alleged certificates. Hence, there could be no occasion for making the entire probate record a part of the complaint in this case. Parties cannot plead their evidence.

From the above we see that the answer to which the plaintiffs demurred denied their alleged ownership of the two certificates, which constitute the subject-matter of this suit. That being true, there is nothing in the record indicating that the plaintiffs had any interest in the certificates which the defendant sheriff had seized. Since they had no interest in the certificates, the demurrer was properly overruled.

The decree of the circuit court is affirmed.

The late Justice RAND did not participate in this decision.